```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
YELTSIN BELTRAN,

                         Plaintiff,


             - against -                         MEMORANDUM AND ORDER

                                                 19 Civ. 4647 (NRB)
CITY OF NEW YORK, Detective O'LEARY,
and Detective BRIAN SHEA, individually
and in their official capacities as
New York City Police Officers,

                         Defendants.

----------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Beltran brought this action under 42 U.S.C. § 1983 against the City of New York (the "City") and two New York City Police Department ("NYPD") officers, alleging that defendants maliciously prosecuted him in violation of his rights under the United States Constitution.  The officer defendants were dismissed following plaintiffs' failure to serve them.  The City, which is now the sole remaining defendant, moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  No papers in opposition were filed.  For the following reasons, the City's motion is granted on the merits.

I.   **Background**[1]

A.   **Arrest and Prosecution of Plaintiff**

On September 25, 2013, two men (one later identified as plaintiff) left the Bora Bora Club on University Avenue in Bronx and crossed the street to approach a ramp leading up to 1551 University Avenue, where the victims were standing. Compl., Ex. B (ECF No. 1-2) at 1.[2] One of those two men asked the victims if they were from the Sedgwick Houses. Id. As soon as the victims responded, the offender took out a gun and started firing. Id. One of the victims died as a result of the injury sustained by the gunshot. Id. The other victim was shot once in his back but survived. Id.

The survivor victim identified plaintiff as the offender both in a photo array on October 7, 2013 and at a line-up on October 11, 2013. Id. at ¶ 18. Following the identification by the victim, the NYPD officer defendants Detective Shea and Detective O'Leary arrested plaintiff on October 11, 2013. Id. at ¶ 15. The police subsequently charged plaintiff with murder and manslaughter, alleging that, on September 25, 2013, plaintiff shot a gun on two individuals in the vicinity of University Avenue in Bronx, New York. Id. at ¶ 17. Plaintiff concedes that he was at

---

[1]   For purposes of this motion, we accept all factual allegations in the complaint as true. Jaffer v. Hirji, 887 F.3d 111, 114 (2d Cir. 2018).
[2]   Exhibit B of the Complaint is the Assistant District Attorney's submission to the state court, recommending dismissal of the criminal case against plaintiff.

2

the Bora Bora Club located in the vicinity of University Avenue in Bronx at around 2 a.m. on September 25, 2013.  Id. at ¶ 14. Plaintiff was arraigned and remanded by a judge in the Bronx County Criminal Court, id. at ¶ 27, and a formal indictment was filed against plaintiff on November 15, 2013.  Id., Ex. B at 1.

During the course of preparing the victim as a witness for hearings and trial, the victim proffered some additional information about the identification process to the Assistant District Attorney.  Id. at ¶ 19.  First, while the victim was in the hospital following the shooting, he did not identify plaintiff from a six pack.  Id., Ex. B at 1; id. at ¶ 20.[3]  Second, the victim changed his recollection about another effort by the police to obtain an identification from a photo array and surveillance videos shown to him while he was recovering at his girlfriend's apartment.  Id., Ex. B at 2; id. at ¶ 21.[4]

On May 23, 2016, the Bronx County District Attorney filed with the court a recommendation to dismiss the charges against plaintiff on the ground that, given the unavailability of an independent source of identification, the prosecution would not be

---

[3]  Paragraph 20 of the Complaint reads, "The witness stated that while recovering in the hospital a detective showed him a 'six pack' and the defendant was not among any of the photos displayed."  The word "defendant" therein appears to reflect a typographical error.  Accordingly, we will regard the word "defendant" as to denote "plaintiff" in resolving this motion.
[4]  The Complaint does not specify the dates of identification procedures discussed in this paragraph.

3

able to establish the offender's identity at trial.  Id. at ¶ 28.[5]
Plaintiff was released from custody on the same day.  Id. at ¶ 27.

B. **Procedural History**

Plaintiff commenced this action by filing a complaint ("Complaint") on May 20, 2019, three days shy of the expiration of the statute of limitations.  See ECF No. 1.  By letter dated July 22, 2019, the Court informed the plaintiff's counsel that the Court would dismiss without prejudice the claims asserted against any unserved defendants unless plaintiff served them by August 20, 2019, as required by the Federal Rule of Civil Procedure 4(m).  See ECF No. 13.  Having received neither evidence of service nor a request for an extension of time to serve, on August 20, 2019, the Court dismissed the officer defendants for the plaintiff's failure to timely serve.  See ECF No. 15.  The City, now the sole remaining defendant, had answered the Complaint on August 8, 2019.  See ECF No. 14.

An initial pretrial conference was scheduled for November 18, 2019.  See ECF No. 17.  On November 15, 2019, the City submitted a letter, proposing a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(c) and requesting the initial pretrial conference be converted to a pre-motion conference.  See ECF No. 18. At the November 18, 2019 conference, the Court granted

---

[5] The Assistant District Attorney's reference to an "independent source" may reflect New York law in such cases as People v. Chipp, 75 N.Y.2d 327, 335 (N.Y. 1990).

4

leave to the City to make the proposed motion, which was filed on December 18, 2019.  See ECF No. 20.

Pursuant to the briefing schedule set at the November 18, 2019 conference, plaintiff's opposition to the City's motion was due January 24, 2020.  After plaintiff failed to file an opposition, Chambers reached out to plaintiff's counsel on January 27 and 29, 2020, seeking an explanation for the failure.  Despite the outreach, no filing was forthcoming.  Finally, on February 3, 2020, the Court issued an Order providing that, unless plaintiff filed his opposition to the City's motion by February 10, 2020, the Court would consider the motion to be fully briefed and unopposed.  No opposition was ever filed.  Therefore, the Court deems this motion unopposed.

While the Court can only speculate as to why the case was not pursued after it was filed, several disclosures by the City in response to questions by the Court at the initial pretrial conference may have played a role.  First, the City stated that records revealed, as would have been expected, that plaintiff's counsel was present at least for the line-up at which the victim identified plaintiff.  Second, defense counsel for plaintiff in the state criminal case did not move for a Wade hearing to challenge any identification of the plaintiff even though there would have been no risk in so doing.  Finally, while there were no other witnesses, there was a videotape which supported the charges

5

against plaintiff. These disclosures obviously went a long way to undermining the argument that the individual officers unconstitutionally arrested plaintiff.

Even though plaintiff has essentially abandoned this case and despite the merits issues that we have outlined, consistent with Second Circuit law imposing an independent duty on the Court to evaluate the sufficiency of pleadings on a Rule 12(c) motion, even when the motion is unopposed, we proceed to do so. See McCall v. Pataki, 232 F.3d 321, 322 (2d Cir. 2000).

## II. Discussion

### A. Legal Standards

#### 1. Federal Rule of Civil Procedure 12(c)

On a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the Court accepts all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Jaffer v. Hirji, 887 F.3d 111, 114 (2d Cir. 2018). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

2.  <u>Pleading of Municipal Liability Claim</u>

In general, municipalities "are not vicariously liable under § 1983 for their employees' actions." <u>Connick v. Thompson</u>, 563 U.S. 51, 60 (2011).  Accordingly, to prevail on a § 1983 claim against a municipality, a plaintiff must show that a municipal policy or custom caused the deprivation of his constitutional rights.  <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658, 690-91 (1978).  "To hold a city liable under § 1983 for the unconstitutional actions of its employees [i.e. <u>Monell</u> claim], a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  <u>Wray v. City of New York</u>, 490 F.3d 189, 195 (2d Cir. 2007) (citing <u>Batista v. Rodriguez</u>, 702 F.2d 393, 397 (2d Cir. 1983)).  A plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." <u>Roe v. City of Waterbury</u>, 542 F.3d 31, 37 (2d Cir. 2008).  "A policy or custom may be established by any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the

7

policymakers exercised 'deliberate indifference' to the rights of the plaintiff." Moran v. County of Suffolk, 11 Civ. 3704(PKC), 2015 WL 1321685, at *9 (E.D.N.Y. Mar. 24, 2015) (collecting Second Circuit cases).

B. **Analysis**

Plaintiff proffers several customs and the City's failure to properly train and supervise those officers as the predicate of his Monell claim. We address each category of allegations in turn.

1. Customs and Practices

Plaintiff has failed to adequately plead any persistent and widespread custom or practice within the New York Police Department that can sustain his Monell claim. Plaintiff alleges four customs and practices within the New York Police Department as the predicate of his Monell claim: (1) "arresting persons known to be innocent in order to meet 'productivity goals'"; (2) "falsely s[w]earing out criminal complaints and/or lying and committing perjury during sworn testimony to protect other officers and meet productivity goals"; (3) "discouraging police officers from reporting the corrupt or unlawful acts of other officers"; and (4) "retaliating against officers who report police misconduct." See Compl. ¶ 32. Setting aside the conclusory recitals of alleged customs and practices, plaintiff attempts to plead the existence of such practices (some of which seem wholly unconnected to the

8

plaintiff's Complaint) by citing a series of lawsuits involving allegations of police misconduct.  See Compl. ¶¶ 34, 35, 37.

However, almost all of the cases cited by plaintiff were resolved by settlement without findings of fact.  Citing various lawsuits alleging police misconduct in various contexts alone is insufficient to plead the existence of municipal policies.  See Jean-Laurent v. Wilkerson, 461 F. App'x 18, 22-23 (2d Cir. 2012); see also Harris v. City of Newburgh, No. 16 Civ. 2731 (KMK), 2017 WL 4334141, at *5 (S.D.N.Y. Sept. 27, 2017) ("The Second Circuit and the district courts within the Second Circuit have held that a plaintiff's citation to a few lawsuits involving claims of alleged constitutional violations is not probative of the existence of an underlying policy by a municipality."); Ortiz v. Parkchester North Condominium, No. 16 Civ. 9646 (VSB), 2018 WL 2976011, at *6 (S.D.N.Y. Jun. 13, 2018) ("reference to other lawsuits over the span of nearly two decades involving allegedly similar unlawful conduct without any allegations as to the ultimate disposition of those lawsuits is insufficient to allege a practice so widespread and persistent as to amount to a policy or custom."). The statements in the internal investigative reports and the public concessions by former NYPD Commissioners in various settings that plaintiff cites in the Complaint have only minimal, if any, probative value as to the current existence of the alleged practices given the temporal gap between those statements and

9

plaintiff's allegations.  See, e.g., Compl. ¶¶ 36(b) (citing a statement in The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department dated July 7, 1994); 37(d) (citing former NYPD Commissioner Benjamin Ward's testimony before a State Senate Committee in 1985).[6]

2.  Failure to Properly Train and Supervise

Plaintiff alternatively cites the City's alleged failure to properly train and supervise the New York City Police Department officers as the predicate to his Monell claim.  Specifically, plaintiff alleges that the City has failed to properly train and supervise the NYPD officers not to commit perjury or arrest persons known to be innocent.  The Second Circuit considered the same theory in Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992). In Walker, the Second Circuit observed:

> Walker's argument misses a crucial step.  It is not enough to show that a situation will arise and that taking the wrong course in that situation will result in injuries to citizens. . . . City of Canton [v. Harris, 489 U.S. 378 (1989),] also requires a likelihood that the failure to train or supervise will result in the officer making the wrong decision.  Where the proper response—to follow one's oath, not to commit the crime of perjury, and to avoid prosecuting the innocent—is obvious to all without training or supervision, then the failure to train or supervise is generally not so likely to produce a wrong decision as to support an inference

---

[6]  Because plaintiff has failed to plead the existence of any widespread custom or practice, his Monell claim under the theory of the City's failure to intervene against the alleged customs and practices also fails.  See Compl. ¶ 32.

10

>     of deliberate indifference by city policymakers to
>     the need to train or supervise.

Id. at 299-300 (internal quotation marks omitted).  Based on this observation, the Second Circuit held that a municipality's policymakers could be deemed to display deliberate indifference only "where there is a history of conduct rendering this assumption untenable."  Id. at 300.  The Second Circuit's reasoning in Walker equally applies here, and therefore, to plead a Monell claim in this context, plaintiff has to allege sufficient facts that demonstrate a history of similar conduct by the NYPD.[7]  However, plaintiff has failed to do so because, as discussed above, mere recitals of a series of settled lawsuits and outdated investigative reports are insufficient to plead a requisite history of misconduct.

### III.  Conclusion

For the foregoing reasons, defendant City's motion for judgment on the pleadings is granted.  This Memorandum and Order resolves ECF Docket Entry No. 20.  The Clerk of Court is

---

[7]  The Second Circuit's conclusion in Walker as to the sufficiency of pleading does not apply here because of the Supreme Court's decision in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), which set a much higher pleading standard than the one applied by the Second Circuit in Walker.  Compare Twombly, 550 U.S. at 570 (the complaint must contain sufficient facts "to state a claim to relief that is plausible on its face") with Walker, 974 F.2d at 300 ("it does not appear beyond doubt that [the plaintiff] cannot prove [a] set of facts in support of his claim which would entitle him to relief.").

respectfully directed to enter a judgment dismissing this case with prejudice and close the case.

**SO ORDERED.**

Dated:    New York, New York
         July 22, 2020

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE